Special View by Thomas Fleishman. The record should reflect that the appellant apparently called last week and indicated to our clerk's office that counsel would not be arguing on appeal, but we do have the benefit of an appellee's counsel, Mr. Fleishman, and Mr. Fleishman, we're going to afford you your 15 minutes. May it please the Court, Thomas Fleishman on behalf of Lucky Motors. Judge, this will be very brief. I'm more than happy to stand on my brief if there are questions. I'm more than willing to, if the Court has any questions with respect to this matter, I'm here to answer them. I'm just out of curiosity, what was the time frame, and I apologize, from the time they purchased the vehicle to the time that the engine was a serious problem to start? How long did they have the vehicle for? Minimum of 10, maximum of 10 days, minimum of one day. It's not exactly clear. There was a suggestion that the car could not have been driven for the period of time it was driven if these things that were discovered to have been removed had been removed. Yes, yes. Any idea what that period of time was? Yes, it was from March of ... I think I can tell you exactly when that was. The plaintiff received the vehicle with all the parts at one point, which was in March of ... You know, you end up so involved. That's like a very detailed chart. That might be the problem. Well, when you were planning on it, starting your argument at one point at the beginning and then working through, now we've made you start to jump around. Yes, no, I totally understand. What we're talking about is in March of 2016, the car was given back to them. And then it wasn't until a year and a half later that we were even told there was a problem and they asked to have this ... rescind the contract. We did not see the vehicle until actually December of 2020. And it was at that point, it was clear when it left the Audi dealership, where it was repaired, it had obviously a water pump and all these different things. When we finally get it back years later, there was no water pump. There was no way you could possibly drive that car without the mechanical things that were taken out of it. And all these things are like underneath the car. It's not like they drop off. You had to purposely take those things out of there. So, having, as we all have, dealt with mechanics throughout our lives and having spent a lot of money with mechanics, I'm unfamiliar with the concept of buying a car as is and then having the mechanic gratuitously make thousands of dollars of repairs they don't otherwise have to make. So I guess the question is ... And obviously we're familiar with the case law that has been cited saying there's various reasons why the car salesperson or any kind of store might, for goodwill reasons, for continued relationship reasons, make repairs gratuitously. But in this case, with the affidavits and everything, is there anything in the record that provided an explanation for why Lucky Motors engaged in this goodwill, if you will? No, there isn't. And I think, Your Honor, that addresses the question of the plaintiff's failure of proof. You know, what we have was a very neutral fact, the fact that there were, quote, free repairs. Now, if we want to really get into the weeds as to what the free repair was, we have to look at the fact that the plaintiff agreed that, yeah, start the work, I'll pay you $900 to put in a new engine. Okay. There were, looking at the records, two invoices from Westmont Audi which were directed to Lucky Motors. One was clearly listed in Lucky Motors' internal thing, their internal record, showing that was part of the rebuild of the engine. And then there was this other one, this one thing. And it turned out to be, which their claim that we don't disagree, that, in fact, was a free thing. And this was a repair of the right or the left speaker front for $126. That was what is in the record is to be shown as the only, quote, what would constitute a free repair. So at some point it suggested that the repairs engaged in by Lucky Motors was approximating $8,000. Is that incorrect? No. In there, what you're looking at, that C628, which was the accounting copy, and that was, it showed that the total cost was $7,651. That's our internal record of showing what it costs and there was also the sublet to Audi of Westmont for basic, what Audi did was, they had a new engine, but, you know, Audi goes there and then programs the ability, the information package, you know, your directional information. It's clearly part of what would be an engine rebuild because that's part of the way it goes. So how is fronting or spending that level of money on repairs not reflective of an intention to waive? Well, you know, when you get on the internet and you somehow, certain things come up. First of all, you know, we're talking about what internal accounting is and how they actually did it. But the most important thing, and what I'm seeing over and over on dealing with different car dealerships, you know, there's an ad for it that shows who's the best car salesman for you. And it's the salesperson that has that person to say, I'm going to buy my car from Chris Wright. And it's amazing that that is how new cars, used cars, it really comes down to this continuing business. And that's how, it's not the salesman who sells the Ferrari one shot a year. It's the guy who, they say, you know, if I want my car I'm going to talk to him about it. And that, it just kind of seizes throughout the whole industry. And, you know, this is off the record, not in the record, but you know, we're talking about here is an Audi, a 207 Audi S6. I mean, it's an expensive car. Is the sales price in the record? Yes, it was. I think it was $20,000. I think that's right. Yeah, it was $20,000. But, you know, you're buying a used car now that has 96,000 miles on it. It's a used car, but you're buying also a car that is, if you're into cars, it's kind of a hot car. So, you know, you're kind of dealing with an as-is situation. And, you know, it is as-is. You're not getting a warranty. So, you know, these are sophisticated, you know. This is not the case that goes into small claims court, you know, and it's the person who bought that car for $100,000 or $1,000. You know, these are people who are on the Internet looking for deals, and I want an Audi. I want an Audi S6. They're a racing car. I mean, it's what we see in these types of exotic cars. So it's a goodwill, it's a desire to have a good reputation. Absolutely. But no one ever put that in an affidavit or explained that as the reasoning. Right. No question about that, Judge. But I think that that was my point, which was that's kind of on the plaintiff. I mean, you know, Judge Fannie says, you know, this is goodwill. And then all of a sudden, well, that's just speculation. You know, well, yeah, that's speculation. He could speculate that, you know, it was because it was fraud and all these other things. But he didn't put it in the record. He didn't. That was his burden, not ours. And so, to be blunt, I mean, it was, you kind of saw the whole, it was a moving record. Initially, it was a course of conduct. Now it's this. You know, on my way to the courthouse, I figured out the case. And he comes up with this idea. And, you know, I'm sitting there, and I've got my record in, and Judge Sherry is going my way. You know, it doesn't really need for me to add anything. And everything he says, I think if you look at it, what the judge said was, well, you know, this is goodwill. It just doesn't sound right to me. And, you know, Mr. Federoff says, well, good for me. You know, it's kind of like a gotcha litigation. And the judge says something, I think that's really true. He said, well, you know, you might have had a breach of warranty with respect to the car, the engine itself, but it doesn't really go to the whole car. And he throws that in the record. So there's just a lot there that could have been said, could have been based upon other things, you know, circumstances indicating otherwise, like all these cases which there was fraud or there was misrepresentations, you know, none of that was here. It was just totally lacking. This whole case comes down to a very neutral fact. They paid, you know, they repaired the car and he got a free $126 deal out of us. Doesn't justify walking away from, you know, an as-is situation, which is basically my position. But it's more than $126, right? Well, he says in the email, I'll give you $900 to start out with and then I'll work it out with Chris Wright later, which never happened, but be that as it may, that was what the agreement was. But this internal accounting, the $7,000 plus, so more than $126 was spent on behalf of by Lucky Motors. Right. It was. There's no question. How much was going to be apportioned to him, you know, never came to fruition. There's nothing in the record that suggests that Lucky Motors ever sent them a bill or anything? No. Anything else you would like to tell us, Mr. Fleischman? Well, other than the fact that I think the trial judge came to the proper conclusion and that the summary judgment motion was granted should be affirmed by this Court. Well, we appreciate your time today. I take it that that counsel for appellant did reach out to you to indicate that he wasn't coming? I spoke to Mr. Federoff yesterday and so I was aware he wasn't going to show up. We learned it ourselves this morning. But we appreciate your time and we will take the matter under advisement and issue a decision in due course.